LOUISVILLE & NASHVILLE RAILROAD COMPANY v.
PETER McKENNA and WIFE.

1. PLEADINGS AND PRACTICE AT LAW. *Evidence. Written instrument Construction.* The general rule in this State is that the construction of a written instrument introduced as evidence, if complete and intelligible in itself, is matter of law for the court, expert testimony being admissible in proper cases to aid the court in reading the instrument.

2. RAILROADS. *Orders.* An accident having occurred on a railroad by means of an obstruction put on the road-way by an unknown third person at a particular trestle in mile 60, the superintendent issued a written order to the employes of the passenger trains to slow up, run carefully, and keep a sharp lookout at mile 60, and while the order was still being acted on another accident occurred from a similar obstruction at the same trestle, by which the plaintiff was injured. *Held,* that the order required the engineer to slow up enough to stop the train on short notice when the emergency did arise, and the court properly instructed the jury to that effect.

3. SAME. *Malicious obstruction.* The duty of railroad companies in cases of malicious obstruction considered.

FROM SHELBY.

Appeal in error from the Circuit Court of Shelby county. J. O. PIERCE, J.

ESTES & ELLETT for Railroad.

W. H. CARROLL and C. W. HEISKELL for McKenna.

COOPER, J., delivered the opinion of the court.

The McKennas recovered judgment against the railroad company for injuries to the wife as a passenger

on the company's train, occasioned by the cars being thrown from the track by an obstruction put thereon by an unknown person. Upon the appeal in error of the company, the Referees report in favor of affirmance. The company except to the report, their exceptions going to the law of the charge.

The accident occurred to a regular passenger train at a trestle on mile 60 of the road, about half after five o'clock in the morning of November 12, 1873. The obstruction was caused by placing a T rail diagonally across the track about midway of a trestle, one end being under the South rail of the road-way and the other end resting on the North rail, and braced on both sides by cross-ties. The proof is conflicting as to whether the morning was clear, or dark, cloudy and foggy. The engineer saw the obstruction about seventy-five or eighty feet before the train struck it. The train was moving at between eight and ten miles an hour, the air-brakes having been applied, and the speed of the train slackened before reaching the trestle in obedience to an order of the superintendent, which was to slow up, run carefully and keep a sharp lookout at mile 60. This order of the superintendent had been given because six weeks before that time a similar accident had occurred at the · same trestle. And the employes admit that they were acting on the' order as still in force. The instruction of the trial judge to the jury complained of related to the duty of the engineer, in consequence of the order mentioned.

The charge objected to is: "But if the evidence shows that the obstruction was put on the track by

a stranger, and further shows that by reason of a previous accident at the same place from a similar cause a short time before, the engineer had been warned to 'slow up' when approaching this trestle, and to keep a sharp lookout ahead, and he failed in either of these duties, or failed to slow up enough to stop his train on short notice when it was possible for him to do so; in other words, failed to prepare as fully as possible for the emergency which he was warned might arise at the place of the accident, and by reason of such failure was unprepared to stop quickly his train when the emergency did arise of which he had been forewarned, and the accident occurred by reason of such failure, I charge you to find for the plaintiff."

The company requested the court to add to the charge quoted above the following qualification: "But if you believe from the testimony that the order to slow up and keep a sharp lookout meant that the engineer should reduce the speed of the train to ten, fifteen or twenty miles per hour; or if you believe from the testimony that the order in this case was to reduce the speed of the train to ten or fifteen miles an hour, and keep a sharp lookout, and that the engineer obeyed the order, then the defendant would not be liable, although the engineer did not reduce his speed to a point below the order, so as fully to prepare for the emergency that actually occurred."

The company also requested the trial judge to give the following instruction: "If the jury believe that said order was a proper and prudent order and regulation for the running of the passenger train at the

time and place of said accident, and that the same was properly obeyed by the engineer in its true sense and meaning by slowing up to a speed not exceeding ten miles an hour, running carefully and keeping a sharp lookout at the time and place of the accident; and further, that the accident was occasioned by an obstruction maliciously placed on the track by some third person unknown, and that the same was seen by the engineer as soon as it was possible to see it, and that then every means in his power were promptly used to prevent an accident, the jury should find for the defendant. It was not, as a question of law, the duty of the engineer, in the circumstances supposed, to stop whenever he approached the space covered by said order, or to reduce the speed of his train so that it could be instantly stopped at any moment while passing over said space. But it is for the jury to say from the evidence whether what was done by the engineer was sufficient to relieve the company from the slightest imputation of negligence." These requests were refused.

The Referees say: "On the part of the plaintiffs in error, it is insisted that negligence in reference to the failure to slow up could only be predicated of disobedience to the order, and inasmuch as the plaintiffs in error proved that to 'slow up' in railroad orders meant to reduce speed to ten, fifteen or twenty miles per hour, that the charge of the judge, imposing upon the engineer a duty far more stringent than the order, was erroneous. This objection undertakes to limit the issue to the letter of the order. The charge was cor-

rect.    If they in whose employment the engineer was, for any reasons satisfactory to themselves, anticipated an accident at a given point, or gave special instructions for care at a given point, in consequence of past or apprehended accidents, so as to bring home to him notice of the necessity of extra precaution at the place indicated, it is not error to charge that his precautions must be such as might arrest an anticipated danger, although they exceeded the letter of his order from the company.    For under the circumstances producing, and as now appears justifying the order, it was the proper duty of the company not only to issue an order for such precaution, but it was equally its duty through the engineer, to enforce it in its full spirit and intent, the avoidance of the danger feared, by taking such control of the train by the use of brakes, slackening speed, etc., as would effectuate the object intended, and enable him to stop the train on short notice."

It is not contended that the mere fact that a similar accident had occurred at the same place, six weeks before, would of itself impose upon the railroad company any particular duty in running its trains over that part of the road.    There is no presumption that because an obstruction has been maliciously put upon the track of a railroad at one place, a similar obstruction will afterwards be put at the same place, or for that matter on any other part of the road.    The law never presumes the occurrence, much less the recurrence of an illegal act, and human experience would scarcely sustain the conclusion that the same crime will be repeated in the same place.    While this pre-

cise point seems never to have passed into judgment, it has been held that a railway company is not liable for an injury inflicted by a stray dog at their station, although a few hours before it had there bitten another person, if it was then driven away: *Smith* v. *Great Eastern Railroad Company,* L. R., 2 C. P., 1. It must be left to the railroad company to determine what directions, if any, it will give its employes under the circumstances of the particular case, under the usual rule which regulates the duties of the company to the public. If the company undertakes to give special instructions to its employes at the time, these instructions must be the measure of the action of the employes. All that they can be required to do is to obey the instructions in their " full spirit and intent." No reason occurs why, merely because instructions are given, the employes should be required, in addition to obeying them, to take every other precaution necessary to avert an accident. The only question in such case would be whether the instructions were reasonable and proper. If, therefore, his Honor, the trial judge, intended to charge, and the Referees intended to report that, under the order in question, the engineer was bound to go beyond the instructions, and adopt such precautions, although not included in the order, as would be necessary to avert the danger of a similar accident to the one that had occurred, they were in error.

It is altogether another question, however, whether the order actually given did not require the employes to do all that the trial judge instructed the jury should have

been done.   The company, in view of its knowledge of all the facts touching an accident and its duty to the public, may be required to give orders, or may give them, in which event the duty of the employe is to obey in "letter and spirit," and a failure to do so would be negligence for which the company would be responsible.   We can easily conceive of cases where the company may have knowledge or good reason to believe that another obstruction would be put upon the road.   In that event it would be its duty to order the train not only to slow up, but to be brought to a full stop, and the track examined before proceeding. And generally where - circumstances demand precautionary measures they must be taken, and the law requires a degree of care proportioned to the risk.   The company did give the order which is deposed to by the witnesses, with special reference to the previous accident, and the employes were acting under it.   We do not understand the trial judge to tell the jury they must go beyond the order.   He merely puts a construction upon that order, and undertakes to define the duties of the employes under it.

The contention of the company was that the words "slow up" have a definite meaning in railroad parlance, and signify that the rate of speed of the train should be reduced to ten, fifteen or twenty miles an hour, and testimony was introduced to that effect.   And no doubt the reduction of the usual rate of. speed of a passenger train to either of the number of miles mentioned, would be a slowing up in a general . sense, and of course, in the usual acceptation of the words.

But his Honor's idea is that the phrase means something more when used in an order intended for a particular purpose, and based upon the possibility that an accident from a malicious obstruction may occur at the designated place, because a similar accident from the same cause had recently occurred. In that view, he thinks the company meant that the engineer must so · slow up as to be able, if by a sharp lookout he saw that there was such an obstruction, to stop the train in time to prevent a similar accident to the one that had already occurred. It would be useless, he thinks, to make the order unless it was intended to be operative so long as it ˝ remains in force. The particular instruction is obscured by the use of the disjunctive " or " instead of the explanatory phrase " that is," or words of like purport. The clause which follows the disjunctive particle is really an explanation of what his Honor considers would be a failure of the duties to slow up and keep a sharp lookout. He says, in substance, that the company would be liable if, because of a former accident at the same place from a similar cause, a short time before, the engineer had been warned to slow up when approaching the trestle, and to keep a sharp lookout ahead, and he failed in these duties, and it would be a failure of these duties if he neglected to slow up enough to stop his train on short notice. Unless this is his Honor's meaning, he has not construed the order, and he has certainly not left it to the jury to put their own construction upon it in connection with the testimony. In this view, the real

points of contest are whether the judge had the right to construe the order, and did correctly construe it.

The general rule in this State undoubtedly is that the construction of a written instrument introduced in evidence, if complete and intelligible in itself, is matter of law for the court : *Bedford* v. *Flowers,* 11 Hum., 242. And it is also the general rule that where the facts are ascertained, even in the case of parol testimony, the court declares the law : *Gregory* v. *Underhill,* 6 Lea, 207, 211. The testimony of experts is, of course, admissible in proper cases, to aid the court in reading the instrument : 1 Greenl. Ev., sec. 280. The expert testimony in this case only tends to show what the words themselves fairly import, that to " slow up " a train means to diminish its speed, the extent of the diminution being necessarily controlled by the object or purpose had in view. To " slow up " in any given case must be such a slowing up as the particular exigency requires. To slow up and keep a sharp lookout for an expected or possible obstruction must mean such slowing up and watchfulness as will prevent the accident, the order being otherwise of no avail. And so the trial judge properly thought and charged. The instructions asked for by the plaintiffs in error were based upon a different theory, and were properly refused.

The exceptions to the report of the referees will be disallowed, and the judgment below affirmed.

Cooke, Sp. J., dissents.